and others. Looks like Mr. Avins gets to go first. Thank you, Your Honor, and may it please the Court. The District Court's declaratory judgment can be reversed for three reasons. First, Gutierrez lacks standing to sue these defendants. In the language of Reed v. Gertz, the judgment will not significantly increase the likelihood that he will obtain access to DNA testing, and Brackeen makes clear that the potential persuasiveness of the judgment is not enough. Second, the CCA issued its authoritative construction of Chapter 64 in 2011, and at that time, he could have pursued a Section 1983 claim. Third, and where I plan to focus my argument today, his claim fails on the merits. The Supreme Court has left slim room for this type of procedural due process claim. Chapter 64 reflects the legislature's judgment that the DNA testing that he seeks would muddy the waters and undermine the state's interest in the finality of its convictions. The restrictions that he challenges are not facially invalid, and that's critical because that's the kind of claim that he's bringing, not an as-applied claim as to his particular facts. So those are the overview of our arguments, and I'd like to start. I know the Court asked for our— Yeah, I want to find out on that, Brackeen. Your opponent relied quite a bit on it, and we were reversed on the standing point, but I'm sure that your opponent will argue, ah, that doesn't matter. What is your view on how that might matter, or does it? I think Brackeen helps in the sense that it's true that the fact that the state trial court might rely on the judgment is insufficient. That was the basis of what this Court said in Brackeen. While, you know, we might defer to the federal court judgment, we know that's not enough. And I think if Reed hadn't preceded Brackeen by a couple months, we'd say Brackeen is almost dispositive. But I think for us to succeed with our standing argument, we have to sort of get around what Reed said, which Reed allowed a very similar claim. And we think that we can do that for the reasons that we set out in our 28J, and I can just go through those. So in Reed, the Court interpreted what the plaintiff was seeking as an order that would eliminate the prosecutor's basis for refusing access to testing. So in other words, the Court said, look, if we—if the Court issues this judgment, the prosecutor has no basis anymore not to release the evidence for testing. But here, we know that that's not the case because of the alternative holdings in the CCA's decisions in 2011 and 2020. So what the Court there said was, look, this—the scheme doesn't allow testing to show punishment-related evidence. But even if it did, he still isn't entitled to testing because the evidence at trial showed that he had the requisite culpable mindset. And so that is a separate— Well, also, Reed, the—yes, they had to address standing, but the case was about the statute of limitations. It was not focused on that. And it just said you have to show redress—that there would be redressability. That's right. It moved on from there. That wasn't in play there because it was clearly a redressable issue. Whereas here, there's a question about whether there is redressability, even if all of the stuff that they have was tested and his fingers weren't on it or whatever, would that mean he could not have received the death penalty? Right. We don't—we think that that's right. I mean, even if his DNA is not on the loose hair or on the robe, at that point, the evidence that was before the state court was enough for him to be sentenced as a party and then to have that requisite culpable mindset because his testimony was that, you know, we had—we came in with screwdrivers. And that may go more to the merits than to redressability, but I mean, it's a little difficult because these are unique kind of claims. The Supreme Court hasn't—it's the Skinner kind of claim that says you can bring a claim attacking a statute as it's authoritatively construed, but you can't attack the state court's judgment itself. So I think with respect to the specific facts of his case, it's sort of illustrative of why the statute is not facially invalid, but it's not—I think for the facial challenge, we just have to look at whether there are any set of facts that could be constitutional in terms of the application of the subsequent— Well, there's a lot of crimes where the DNA wouldn't matter. That's right. If you committed something online, if you did a child porn online, how is the DNA going to show anything? That's right. So I guess I'm just trying to understand, I mean, what is your—what is your best argument on kind of—so you're saying because DNA might not matter in some cases, his case doesn't matter, but it could matter if it would have affected him if this was a rape and they had the, you know, X and Y and never tested it, that would seem to matter, wouldn't it? Right. And so he pursued a claim for DNA testing in the state courts and the CCA denied it. If he wanted to challenge the CCA's application of the DNA testing statute as to him, there's a manner that he can do that, and that is a direct appeal to the United States Supreme Court if there's a significant federal issue, and in fact, Rodney Reed did exactly that in 2017 when his DNA testing motion was denied. But if you're going this route of pursuing a claim under Skinner, which is just that the statute as authoritatively construed by the CCA is facially unconstitutional, then you have to meet Salerno's no set of facts, and Judge Haynes, you brought up an example of an online crime. I mean, there are tons of situations where the DNA wouldn't matter at all, and in fact, we highlight several instances where post-conviction applicants received relief or were found to have satisfied the standard where DNA wasn't necessary, and so those were the Atkins claims, the intellectual disability. The DNA isn't needed to show that you're intellectually disabled or not, and so on that front, we would submit that that standing alone is sufficient to defeat the district court's facial declaratory judgment, because the district court had to say that there were no circumstances. In the district court's words that Chapter 64 and its refusal to allow DNA testing to show punishment-related evidence makes Article 11071 illusory, makes it a barricade, and we've cited examples, and I think that it's clear that that's not true. I appreciate, and this is a nuanced and important threshold argument, I guess I'll just, you know, to put the cards out on my side, I'm pretty uneasy looking at Reed, very succinct reasoning, and this is, you know, it's not your fault. Both of you relied on the opposite cases, Reed and Bratkeen, and the presumption may be expect the Fifth Circuit to constantly be reversed, and argue the opposite, and maybe that'll be what the Supreme Court law is, but the question is, it seems like your argument is, worries me, because it's bleeding into the merits, in other words, it's I hear you saying, well, Kavanaugh did say, identify the injury. Injury here is, I didn't get the DNA test, and the answer is, well, if we look to the death penalty context is, assume state prosecutors will follow federal court orders. So if the justification is, oh, he wouldn't get it under 64, we have to presume that the district court's order is correct for purposes of standing, he would have gotten it. I'm pretty, it's hard for me to see that we don't get past standing. Well, I think that, frankly, Your Honor, I think that when we saw Reed, we had to look carefully at it and decide, do we still have a standing argument after what the court said? I agree, I was on the case in Reed. We argued standing pretty heavily, and I think it received a paragraph, so. You won in front of us. So I think, though, that there is that narrow room to say that, well, even assume that he's right, there's this independent state law basis that the prosecutor could have not to turn it over, but laying our cards on the table. They are saying, factually, there's a hair that was never obtained before, and there are better tests, and it might really conclusively show that he wasn't at the crime scene. That's right. I mean, that's his argument. Maybe that gets them past the door at standing, but then they run into bogger along merits, right? And so, I think. Yeah, but Reed was not dealing with the same redressability issue that's here. And again, like I said, it wasn't what they granted on, obviously they had to address this, and we obviously have to follow what they say, and I understand there's a little bit of confusion in my mind between Reed and Brackeen, but I'm trying. It wasn't really in play, the actual issue for that particular party. I think respectfully, redressability was in play. I mean, that was an argument that the parties raised, and. It was in play in that sense, but not in reality. I mean, in other words, there it would have an impact. I'm just wondering here, where it would, because it wouldn't even show he wasn't in the building just because, you know, because he could be wearing gloves, so just because we don't find his fingerprints, how does that mean that he wasn't in the house? I completely agree with that, and I think the question, and where I think we're all, it's just a difficult, because of Brackeen, because of Reed, is to figure out where that matters. Our view is that that matters more towards the merits, and so it shows that it's certainly not unconstitutional as applied to him, because it wouldn't affect, you know, whether he was entitled to this testing or not, and it wouldn't change the punishment. Okay, let's assume Argumendo's standing. Take us to the rest. Right, so on the merits, I think that, I've addressed one big point, which is that this is a facial challenge, and so we're not just looking at whether this is unconstitutional as applied to Mr. Gutierrez. This has to be, broadly, as the district court put it, this is a luscery and a barricade. We offered a couple of examples that you can think of, of evidence that would substantiate an allegation that you didn't have the requisite culpable mindset, and some of the strongest would be evidence that has nothing to do with DNA. So for example, in the Murphy case that we cite in our reply, recanting witnesses might be really crucial. So in other words, and just to use Mr. Gutierrez's situation as an example, if his co-conspirators, you know, came back with affidavits that said he wasn't in the house, and of course he hasn't done that, but if he were to come forward with that kind of evidence, that would at least help show, okay, maybe he didn't have the requisite culpable mindset. Edmond, from 1982, is the landmark Supreme Court case about what mental mindset you have to have, and there, he was just the getaway driver, right, and so if he could come up with evidence of that nature, maybe that would matter, but the problem is he can't redo the state court trial, which had the evidence in the record that he had three confessions, the second one says we planned the ripoff, the third one said we brought in screwdrivers, he was in the house. So he can't undo that mix. In fact, the CCA has said in the context of actual innocence claims, there's three types of evidence that could really matter, you know, physical evidence, scientific evidence, and then eyewitness statements, and Chapter 64 doesn't prevent an applicant from bringing forward any of that kind of evidence to show that he didn't have the requisite culpable mindset. Where do you think the district court made its error in perceiving a stark conflict between 64 and Article 11, and the other way of asking that is, what is the interplay between the two? There really doesn't seem to be much of an interplay, I mean, I suppose that something in Chapter, if you obtained the evidence, that could help you show, that could help you meet your burden under Article 11071. I think the district court's error was that it didn't follow what it did with respect to Mr. Gutierrez's claim about the preponderance of the evidence standard. So when the district court analyzed the preponderance of the evidence standard, the court noted all the things that I've just talked about. This is a facial challenge, there's no substantive due process right, you know, it's not impossible, it just might be difficult, and those were all the same sorts of factors that the court should have looked at with respect to what the district court perceived as the, you know, the impermissible barricade that Article 64 represented. The other error . . . In a simple form, am I correct, it's that it's an illusory right because if the reduced standard of proof gets you testing that can't reach the higher standard of proof, is that the essence of her . . . Of the district court's reasoning? Yes. I think the district court's reasoning, and again, it was sort of the last four pages of the opinion, was that if someone wants to show that they are actually innocent of the death penalty or that they couldn't have met the standard to show they had the culpable mindset, the only way that they can do that is through DNA evidence. And I think that is the crucial error that the district court made. The district court said only a few defendants can do this. Now, first, if only a few defendants can do it, then some defendants can do it, which means that the statute isn't facially unconstitutional, but even beyond that, as we've just been discussing, there's other types of evidence that can come into play. So I think that . . . Well, long before there was DNA, people were able to appeal and file habeas and all that kind of things, 1983s, whatever, relevant to the death penalty. That's right. And in fact, Article 11071 was enacted in the mid to late 90s, post-Sawyer, which was in 1992. Texas didn't enact Article 64 until 2001, because DNA testing was still just sort of getting underway, and we were one of the first movers on that front. Let me back you up just a bit, not temporally, but in the analytical steps. As I understand the argument by Gutierrez, is that Texas has created a liberty interest in showing innocence of the death penalty through 11071, whatever, 583, 385, something. And so that's there. Do you agree with that? Is that a liberty interest protected by procedural due process? So yes. Under . . . Okay. So let me move you to my next. There's no doubt you wanted to clarify something, but let me give you a chance to do that after I ask you something else. That being so, it seems to me that Judge Tagli, in some way, was saying that through this other statute, Chapter 64, Texas is limiting the enjoyment, the protection of that liberty interest, not because DNA is the only way you could enjoy that liberty interest, but it is one, perhaps, one quite important way in some cases. I don't know how you tie those two together. I'm not sure what case law really supports that that is somehow barred, that Texas must open up all the tools that might otherwise be available. But there is something there, that these are indigent parties, there is state money available occasionally, but in some cases, the most important evidence will be this, and not eyewitness testimony and whatever else. So how do you . . . why isn't that at least a reasonable interpretation of how this particular interest would be protected in Texas? I think it's by turning back to the principles that the Court set out in Osborne, which essentially set . . . Set out in what? In Osborne, in District of Attorney of Alaska. That's the Alaska BNA case? That's right. I think . . . Well, you say it's the same program up there. I don't see the issue was joined in Osborne. Is that correct? I mean, there was no statute, but it looks as if it was implemented just for actual innocence and not for sentencing, but the Supreme Court . . . I mean, I'm sure I didn't read the cases often or as carefully as you did, but I didn't see this particular tension between proving one versus proving the other was in play in Osborne. I think it was to a limited extent because the Court said you have to frame the plaintiff's claim, in that case Osborne, in relation to the post-conviction framework. I think here, again, the state, as Osborne said, the state doesn't have to offer DNA testing. If it does, it just has to comply with . . . they can't be fundamentally unfair, and so I think that's really where the high bar is, and Osborne also said looking at the state's DNA testing procedures, looking at the federal DNA testing procedures, there are restrictions in all of them. Some of them are more restrictive than Texas's. At the record, at 620, 621, Gutierrez, in his complaint, compiled the states that allow sentence-related DNA testing, and it's only 16 or 17, so it's not even a majority . . . Why it necessarily requires or assists DNA evidence on the death penalty, because of the fact that in Texas you can be part of it without having actually been the stabber. So I mean, my memory of 9-11 is some of that was formulated by someone who wasn't anywhere in the U.S. and caused all that 9-11. Would we say that person couldn't get the death penalty if they came to America? Because even though they weren't there, so their DNA wouldn't be anywhere in the airplanes, but they were the ones who organized it and sent everybody out to kill all the people on the planes? That's a fundamental problem with the district court's analysis in this claim is the issue that he's trying to show that he didn't meet the death eligibility requirements for is his mental mindset, and how does DNA evidence show that? Because again . . . That's why I didn't understand when you said if he wasn't there that might make a difference, because if he organized this robbery and told everyone to bring their, you know, whatever it was, their knives, to come and attack the lady if she was there and kill her, then why isn't that enough? Yeah, I mean, I think that that's right. There are all sorts of problems with trying to use DNA evidence to undermine a mental state. And so, Judge Southwick, maybe also going to your question, I think that the legislature, you know, Osborne gave the legislature, state legislators, pretty wide room to structure their DNA testing framework and to structure their post-conviction framework. And so, I don't know that the state has to achieve perfection in every case, that everyone has every available source of discovery to them, and I think the claim, the only type of claim that he can bring, that in all circumstances, this would be violative of the . . . But let me ask you this. Why would we get to the merits if you went on the statute of limitations? I'm not saying you will. I'm just wondering why you haven't . . . when I said, okay, let's get past standing, why you didn't go next to . . . Oh, sure. And I . . . Because isn't that the next item we have to look at before we get to the merits? Well, I don't think so, necessarily, because statute of limitations isn't jurisdiction. No, but . . . So, I think the court could. Sure, sure. I mean, we haven't foregone. I'm not trying to forego our statute of limitations argument. I think that Reed doesn't foreclose it. I think probably just our strongest argument at this point is just this isn't a facially invalid scheme. There's nothing irreconcilable. Do you not want to address the statute of limitations? Oh, no. I'm happy to. Please do. So . . . I just want to understand it. Sure, sure. So, the claim that the plaintiff brought in Reed, as we've been discussing, or in here, is a claim that the statute is violative of the Constitution as authoritatively construed. And so, the question is, when can you bring that authoritative construction claim? And here, in 2011, the CCA said, look, Chapter 64 doesn't allow this kind of testing. At that point, he unquestionably, Mr. Gutierrez unquestionably could have gone to a federal district court and said, this scheme is unconstitutional under Skinner, and I want a declaratory judgment that this is improper. And then, he could have used that declaratory judgment if he had won, and the next time that he wanted DNA testing, he would have been able to use that instead of where we are now, which is kind of continuous parallel proceedings in state and federal court. What's the best case and test to determine distinctness or sameness? Or, another way to ask that would be, what's your limiting principle that you've said? In other words, the district court, in its short analysis, to my memory, no case authority. Oh, there's been a legal change, and that justifies the later request. Right. The no fault provision that was used against him. Right. But then, Gutierrez is adding to that, saying, plus, I have new biological material. Right. So, again, the question that would be helpful to me on this is, we know what the accrual moment is from Reed, but surely someone can bring another request for DNA if they have changed facts and the law has changed? Sure, and they can do that under state law. So, I think the best case is, we cite two in our brief, Whitaker, which is about substantial changes to method of execution claims, and then Hearn, which is about a continuous requirement to register as a sex offender. And so, the idea is, every year that you register, that's not a new accrual. And to your question about what is the limiting principle, I think the limiting principle is, if the CCA, just in the words of Whitaker, substantially changed its analysis. Right. So, if instead of denying it on one basis, the CCA issued an entirely different construction, then you can bring that type of authoritative construction claim at that point. But here, it's just, the claim is exactly the same. In fact, in 2020, the CCA just block quoted its reasoning from 2011. So, nothing had really changed, and there's been no explanation of why he couldn't have brought the exact same claim that he did in 2019 and 2011. So, that's our statute of limitations argument, and Reed was just about whether the claim accrued at the start when the trial court denied it, or when it went through the appellate process. And now we know it's the end of the appellate process. Reed didn't address the separate question of, if the authoritative construction of the statute hasn't changed at all, why would there be a new accrual period from that point? And so, those are the three bases that we think the court should reverse the district court's declaratory judgment. Well, with a minute left, I guess, did I read in the record that at moment, sort of briefly, there was an order to give him DNA testing, but that was withdrawn? I believe that that's right, and I don't know much beyond that. I think it may have been a clerical error, you know, in a state trial court, but I'm not sure about that. Although, I think, just going back to that point, maybe some error aside, in general, we trust state trial courts to faithfully and competently administer these schemes, and I think that's where most of these . . . Skinner channels most of these claims through state courts as opposed to federal courts. Thank you, Counselor. Ms. Fisher, how long have you been with this case? I have been on this case since I started at my office in 2018, which is when my . . . Well, it predates you then. Yes, yes, you do, for certain, for certain. I listened to the oral argument a good decade ago that Your Honor was on. May it please the Court, Annie Fisher for Mr. Gutierrez. I'd like to start with the standing argument, because the Court asked . . . Do you want to . . . I mean, you rely, or your brief relied extensively on our brackeen, and we were reversed on that, so tell me how that doesn't impact your argument. Your Honor, I would say that the rationale that our office relied on, that Mr. Gutierrez relied on in arguing standing, citing brackeen, that that standard hasn't changed. That brackeen did not overrule Reed. It did not overrule the Lujan factors. It did not set a new test for Article III standing. What it really did was decline to extend Reed to non-parties. The fatal flaw, according to Judge Barrett, was that the brackeens attached federal parties who really couldn't do anything to vindicate the rights should the brackeens win their lawsuit, because it was the state actors that were using the ICWA statute to prevent relief. Mr. Gutierrez is not only similarly situated to Mr. Reed, he's basically identically situated. But in Reed, there really wasn't a real argument that the DNA doesn't matter, but here there is, so does that affect redressability? No, Your Honor. In Reed's case, the CCA, they did not say, if Mr. Reed wins this 1983, then we certainly have to grant him DNA testing. They denied his Chapter 64 motion on several grounds that would still be in play. The number one was that he had filed his Chapter 64 motion for purposes of delay to basically put off his execution, which would not be touched if he had won his 1983 lawsuit. Justice Kavanaugh, in deciding Reed, the standing issue, made it very clear that Mr. Reed would have redressability because the district attorney's office would be more likely to comply with the statute should he win. And that is exactly the same in Mr. Gutierrez. But does it matter? So, okay, let me just give a hypo that's completely different. What if it was a porn, a child porn case? How could DNA impact that, and would it matter then? I mean, would that be redressability if he says, well, I want to take a DNA test of, I don't know what, of the kid to show that I wasn't touching the kid. Yeah, but you were being accused of doing this online. Would that affect the redressability? Are you saying that solely purely merits it can't affect the redressability? Doesn't redressability matter as to whether it would matter? It does. And in Your Honor's hypothetical, no. I can't imagine a scenario in a computer-only child pornography case where DNA would make a difference. But DNA has changed the landscape of the evidence that can be presented. DNA is fundamentally different than other types of evidence. While it's true, as the state argues, that yes, one could file under Section 5A3 for innocence of the death penalty with other types of evidence, evidence that existed before DNA, as my friend across the aisle pointed out, that that statute predated this. However, as Osborne noted, DNA is different. It's scientific evidence. It's not speculative. It's definitive. It's concrete. I think a great example is actually what this court decided last month in Neal v. Vinoy. And I apologize. I know Mr. Verali also cited this case yesterday. And I likewise did not. You heard that yesterday, huh? Yes. Yes. I did not file a 28-J, and I apologize. I'm happy to do additional briefing. But in that case, it was very similar. It was a situation where two people were inside the house, and one person was outside of the house. And this court found that Mr. Neal's counsel was ineffective because he didn't use the forensic evidence that could tie the two co-defendants to being the people inside that house. And if I may briefly just quote, utilizing forensic evidence would have been objective scientific evidence for the jury to consider as they determined who was in the house. While sure, people who are intellectually disabled could show that they're ineligible for the death penalty, people who are under 18 can show they're ineligible for the death penalty, but to think that a witness who recants would be clear and convincing evidence the way DNA evidence is. DNA has changed the landscape. And what people who are convicted under the law of parties, like Mr. Gutierrez and me, is concrete evidence. Because the law of parties doesn't really matter what role you play. Because of the law of parties, when you're an accomplice, you're just as liable. And what the Supreme Court has said, going back to Furman, is that you need to narrow the group of people who's eligible for the death penalty. So sure, Mr. Gutierrez has lost the argument at this point that he was not an accomplice and that he would not have been convicted if DNA evidence was presented. However, the next question is if he is someone who should be executed for that and his role in that crime matters. The state's entire theory, from their opening statement, through federal habeas, through this lawsuit, is not, well, sure, maybe he was involved, but we don't know. They argue that he was a principal. They argue that he was in that house. They argue to the jury, and what the jury heard was that he wasn't only in that house, that he was the person who killed Mrs. Harrison. DNA evidence would rebut that. It would rebut his role. It would completely undermine. But how would DNA evidence show he wasn't in the house? It might show that his finger wasn't on the knife or whatever, but how does it show he wasn't in the house? Because, you know, the fact that I'm sitting here at this table doesn't mean that my finger's over there, you know. So, I mean, the fact is DNA is very helpful when we're talking about, for example, rape and the related things there. But first of all, you can wear gloves, and second of all, you can be standing here telling someone else, telling them to kill someone back there, and my fingers aren't going to be there. They're not going to be on the gun or whatever it is. I understand, Your Honor, and I think it's a fair question. However, if there was DNA from both of the co-defendants inside the house on the biological material, no one has ever argued that there were more than two people in this house. In fact, there are a few things that everyone basically agrees on in this case, which is that there were two people inside of the house, there was at least one person outside of the house, and that there was biological material collected that could definitively show— I'll leave out the word definitively, but that would show, that would be likely to show who is the person who killed Mrs. Harrison. Sorry, I'm just going to interrupt. Where are we in the argument now? This is very helpful, but we're still at the standing argument? Okay. I pivoted to answer Judge Haynes' question. I know, and I appreciate that. I think I can keep it in my head, but if I could go right back to where you were before you got the questions that have taken us down this route. Sure. The last remark you said that I was interested in hearing your answer was that Gutierrez is in an identical position to Reed in terms of standing. Could you explain that? Yes, Your Honor. So, much like Mr. Reed, Mr. Gutierrez, the injury he suffered is that he's being denied this DNA that he needs to vindicate the right that Texas has given him. Much like Mr. Reed, he has named as a party to that case the district attorney and the chief of police, which is the same district attorney that— Not literally the same district attorney, not the same person. It's out of a different county, of course, but is the district attorney. It is the district attorney who's causing that injury by denying access, by enforcing the statute. I think I understand. That is identical to the Kavanaugh very tight paragraph. Correct. Exactly. I mean, you could take that Kavanaugh paragraph and basically substitute the name Gutierrez. Okay. I understand. Go ahead. All right. To get back to Judge Haynes' question, and if I'm not answering it, please let me know, Your Honor. But because the state's theory, because, as I was saying, it is undeniable and that everybody agrees that there were two people inside the house, it is what the state has said over and over, and because everyone agrees that the biological material that was recovered is exactly the type of biological material that can show who committed this crime, it's literally fingernail scrapings. I mean, it doesn't get much more relevant than that. And, of course, a single loose hair tied around the decedent's finger. Even the CCA, in denying Mr. Gutierrez's Chapter 64, under the current statute, even the CCA said that if that DNA, under the fingernail scrapings, came back to Pedro Gracia, one of the co-defendants, this was assuming that Renee Garcia, the other co-defendant, was also in the house, if Renee Garcia and Pedro Gracia's DNA came back on that biological material, that could be helpful for Mr. Gutierrez. And they were saying that, arguing it under the current statute, not even arguing that it would show that he's innocent of the death penalty. They just found that situation implausible. But if two people's DNA, other than Mr. Gutierrez, was in that biological material, no reasonable juror would find that he killed, he attempted to kill, or that he could anticipate that someone would be killed, which is the statute. How is that so? I mean, you were taking me down the path, and at that point, why can't he be the one to order it? We want the $600,000. Go kill that lady. I'm going to sit out here in the car. You go in there and kill that lady if she won't give you the $600,000. Your Honor, there's no evidence that was admitted at trial to show that Mr. Gutierrez ordered this, other than a statement that he made in one of three statements that was, these statements were contradictory. There is no other evidence to support that. I would also add that this, to the extent one would credit the statement that he planned this, that statement clearly describes that what was planned was an attempt to commit a burglary when no one was home. Just, I know Your Honor was giving a hypothetical, but I just need to say, if there were no knives or any... No, it's a screwdriver, but, okay. Well, they were looking for money. This wasn't a plan to lure people... But a screwdriver can kill, obviously did, so I'm sorry, I shouldn't have said knife, I should have said screwdriver, but either one can kill and did. I would argue that the difference is, if one is planning to open drawers and open cabinets and lure someone out so no one is home, this entire crime was designed to take place in an empty house. And having the states, if a jury were to hear this, after being promised by the prosecutor that not only was Mr Gutierrez in that home, but he had committed the murder, and then they learned that DNA actually showed that two other people were in that home, and that this line, that he allegedly planned this rip-off, a statement that, I know this isn't at issue here, but that Mr Gutierrez has challenged and contested since before his trial even began, but should a jury credit that? And I know we're talking about that here. After the states' case fell apart, there's no reason that they would believe that a crime that was intended to be in an unoccupied structure, luring someone out, and I don't mean to get hung up on the fact... But, I mean, all of that evidence can and was presented in the original trial. I mean, the notion that, well, we were just there to rob, we weren't there to kill, la-la-la, all of that's already out there. That's not DNA. That's just kind of how you try to win a death penalty case, is to say, oh, my gosh, I mean, I had a screwdriver in my pocket and I just ended up, oh, my heck, this lady coming after me, and it was just the immediate response is, that may not be a murder, that may be a manslaughter, la-la-la-la-la. So, I'm trying to understand why that has suddenly changed. What would be different is, Your Honour has to remember that this case was argued with Mr Gutierrez in the House as a principle, and so the state's credibility and their theory of the crime would no longer hold water. But this is an as-applied argument, isn't it? No, Your Honour, this is a facially... We are challenging Chapter 64 on its face for being irreconcilable with the right given in 5A3 of Article 11. And so what we are saying, which I understand Your Honour's understand because you've said it back to us, but that the idea is that Texas has given this right, this right to argue that you're innocent of the death penalty, but they haven't given access to the evidence that a person tried under the law of parties like Mr Gutierrez would need to vindicate that right. But... OK, I must... That was the argument that was available in 2011, wasn't it? What is different about that package? So, what has changed since 2011 is that the reasons that Mr Gutierrez was denied testing was not simply that he was... that exculpatory results would show that he didn't commit the crime. He was denied initially for four reasons. The first was that there was the at-fault procedure in the statute. And that's gone, and that would be, but the others were independent grounds, correct? Yes, Your Honour, but those have also changed. The court in the CCA focused a lot on the fact that this single loose hair, which would be very probative, according to the state's own medical examiner, aside from the fingernail scrapings, might be the most probative evidence, that they represented that that single loose hair... It was no bad faith. I'm not trying to say it was bad faith, but that it either didn't get collected or it... I don't know if it got lost. It didn't exist for whatever reason. We're not arguing bad faith. No-one was arguing bad faith then. But that the single loose hair that Mr Gutierrez in his initial Chapter 64 petition was relying on, that it didn't exist. And so they said, look, you want a piece of evidence tested that doesn't exist. We have to take their word for it. They're the state. They're representing that. Well, that has changed. Um, Mr Gutierrez's current counsel was able... Just to be clear, on the timeliness, it's not primarily a tolling argument. It's not primarily the district court's basis that the no-fault provision has been revised. It is the hair, the new biological material. That's the changed circumstance that makes the request a decade later a distinct and new one for accrual purposes? It's the combination of the evidence, Your Honour. Because had Mr Gutierrez filed this lawsuit back then, there wouldn't have been redressability because he would have been dinged, for lack of a better word, for the very reasons that he was denied the first time around. There wasn't a hair, so he couldn't get that tested. The at-fault provision was still in place at the time. He would have lost on that like he did. Um, and the other reason is that Mr Gutierrez was denied in his first motion was that the court found that identity was not an issue. However, all of that changed in the second motion. Just staying on this, you've got plenty of time. He cited two cases establishing a standard as to when there is separateness for purposes of accrual, and then he also offered a limiting principle that we should look at the construction of the CCA. It is true that they really just cross-incorporated later. They cross-incorporated? They did. So what's your best case, and how would you respond to those points? So, Your Honor, I did not find a case directly in point. We're not arguing this is a continuing violation like the sex offender case. And you're not arguing tolling primarily? Well, it's part of my argument. Not primarily, that's correct. Although I do have an argument. So what's the case that helps us understand if for now we're putting tolling aside, and it's not a continuing, the later request is distinct because and according to what case? I don't have a case to cite, Your Honor. So what's the analysis, then? So the analysis is that the... First of all, I do want to just correct one thing or at least clarify one thing. It wasn't just a cookie-cutter denial. Things changed, and that's what I'm getting at. I mentioned the hair, that the hair changed. I mentioned the law, that the law changed. But another reason that Mr Gutierrez was denied in the first Chapter 64 motion was that the court found that identity was not an issue. When Mr Gutierrez brought his second Chapter 64 motion, he presented copious... I can't even articulate how much evidence he presented to challenge the identity prong. Recanted statements, as the state has argued should be considered. Expert testimony going to identity. Evidence that the lead detective had lied about in terms of identity. And the CCA actually acknowledged that he brought new evidence that challenged identity that was considerable and worth considering. However, they said that they no longer are saying identity is not an issue. They're now not going to reach that issue because it doesn't matter because of law of parties, because at the end of the day, he can't get past the fact that exculpatory results wouldn't show that he wouldn't have been convicted. And so the... Yes, correct, correct. He hasn't shown by preponderance that it would be material to any of the state's, what I think of as aggravators, eligibility. No, no, I'm not saying that part. I'm not saying... I'm sorry, Your Honor. I'm not saying that it went to sentencing. I'm saying that the reasons in Mr. Gutierrez's second petition, Chapter 64 motion, that he was denied rested on a single issue, and that was that he couldn't show that he wouldn't have been convicted because it only went to actual innocence. It didn't go to innocence of the death penalty. That was the thrust of their argument. The other three reasons for denying their case were no longer present. So when Mr. Gutierrez... In terms of statute of limitations, he was in an entirely different position because now, should he win his 1983, it would show that the only thing standing in his way is no longer in his way. It would affect the redressability. I hope that answers Your Honor's question. Yes, please. As I had argued, DNA changes the landscape, and so the fact that people can bring challenges under 5A3 is not the issue. As the Supreme Court said in Osborne, when the procedures are fundamentally unfair to vindicate the right, that right may beget new rights that a court has to acknowledge. I think a helpful case to look at is the case that actually Judge Togle cited for this principle, which is Griffin v. Illinois, which is a Supreme Court case. In that case, the Supreme Court recognized that the state of Illinois gave a right to people convicted of crimes to a direct appeal. That was a right they choose to give. However, the state of Illinois also decided to give a right to a free copy of the trial transcript only in two circumstances. They decided to give it in the circumstances they probably felt were most important to people who were sentenced to death and to people who were challenging their conviction based on a constitutional violation. What the Supreme Court found was that even though, yes, some people could access that statute if they needed to, if you were convicted of a crime that wasn't a capital crime and you wanted to challenge your conviction based on a non-constitutional, for a non-constitutional reason, you didn't have access to vindicate the right that they gave you. It made that right meaningless. And that what the Supreme Court said was to reconcile that, you need to reconcile those statutes in a way that give meaning to the right, the right that Texas has chosen to give. Texas wants people to be able to argue that they're innocent of the death penalty because they've extended that right to them. Weird. I think this versus Illinois just actually is an argument. And your use of it is certainly reasonable. Let me go back to Osborne just a minute. Obviously, this is a fairly old case in the world of DNA. But nonetheless, it does seem to set out some markers. And one of it seems to give discretion to states in how to fund this. There's no basis in our precedents for recognizing federal constitutional right to DNA evidence. I may not have highlighted the key language later, but it does talk about the states have enacted statutes dealing with access to DNA evidence. They have done it in different ways. Again, 16-year-old opinion if I remember the date right. Is that changed, you're saying, that this sort of flexibility of the states in working through when it's going to be available, when it's not, paid for by the state, when it's going to be available, when it's not. Are you saying the rules of the road have changed? Or are you making Osborne, you think it's directly applicable and helpful to you? I don't think it's changed, Your Honor. You know, Osborne is interesting because it was only analyzing the statute to decide if the procedures within the statute were going to vindicate the right that Mr. Osborne wanted to vindicate. I don't think it matters, but wasn't Osborne actually not a statute, but some other procedure established by the state? In Osborne, Your Honor? Yes, Osborne was actually not a DNA statute. The Alaska statute in Osborne that was at issue was actually similar to 5A3. It was about filing a subsequent habeas petition. So returning to Osborne, why isn't, I mean, I read that as saying that these rights are important, they're being recognized by the states in different ways, and there was no suggestion to me that they need to be nationwide federal standard on when it's debatable. So perhaps you're relying on the liberty interest arising under 11071 that creates it. But I wouldn't be surprised if there weren't similar statutes in Alaska at the time, but again, not at issue. Proceed. Yes, Your Honor. You know, I would say that, you know, states do have the right to choose what right they want to extend to people convicted of crimes in their state. Texas has chosen to extend the right to file a second or subsequent habeas petition to show that you're innocent of the death penalty. Osborne explicitly says that federal courts can upset post-conviction relief procedures if they are not adequate to vindicate the rights that a state gets. So Osborne stands for the principle. I would argue that Osborne actually supports Mr. Gutierrez's case because Osborne stands for the principle that a federal court absolutely, it's your role, because of the liberty interest, and we seem to both agree, thank goodness, that there's a liberty interest in arguing that one shouldn't be executed, that the death penalty was not the appropriate, limiting, the death penalty is not appropriate when limiting who should get it. When you bring up a right to show innocence in a death penalty case, I may be misunderstanding. I thought Texas then had put in subsection 73 to harmonize with chapter 64 in the context of a possibly innocent person. Your Honor, I have to be candid. I'm not certain what you're referring to. Okay. And it is in the briefs. Maybe that's a complete misunderstanding. Well, you're speaking to, the stark conflict you're embracing from the district court is that they have a right to show innocence in the death penalty context, but 64 has, has irrationally taken some of that away, and it has won. Yeah, you know, and I wouldn't even say irrationally. I think probably it was well-intended, but because of the law of parties, it's not adequate to vindicate the right. The procedure's simply not adequate. It's not fundamentally fair, and this is an evolving area. You know... What about the law of parties? The law of... The burden of persuasion, the burden of proofs that are different in 64 and Article 11. That's correct. Why specifically because of the law of parties? The law of parties is what really complicates this, because if you didn't have the law of parties, this idea of what role somebody played, were they inside, did they actually kill someone, did they anticipate someone would be killed, because of the law of parties, Mr. Gutierrez can be guilty of capital murder, whether it's, whether he's an accomplice or a principal. So arguing that he didn't actually kill her wouldn't be relevant to go to what Chapter 64 covers. And as this... I mean, so the problem to me is the notion that the district court had that, well, if you don't have DNA evidence, you're only talking about getting the death penalty, not about being found guilty. Obviously, under 64, you can get DNA to not be found guilty, but if you're talking about just not getting the death penalty, the notion that you have to have DNA evidence for that, how can you sustain that when, like I said, the death penalty's been around for centuries, the DNA has been around for a couple of decades? I totally get it. I would say that Judge Togley was not arguing, or at the very least, we are not arguing today, that DNA is the only way to vindicate that right. However, it is the way that Mr. Gutierrez and people like him, especially those convicted under the law of parties, need to vindicate that right. And as I had mentioned before, this is different. It's not that that right... And this is where I think the Griffin case is really helpful, because Illinois, they chose who should get to get free transcripts. It was what they felt was the most important. But the Supreme Court in that case said, look, you've given this right. You need to give people access to what they need to vindicate that right. And while not everyone will need DNA, the child pornographer will not need DNA, but people convicted under the law of parties today, that's a right that they need, and that this court has every right to review those procedures to decide if they're fundamentally unfair. It is a new and evolving area. There's not a case I can point to that says, this is directly on point. They've already decided this. But I would argue it's more than fair for Mr Gutierrez to ask this court to consider that the evidence he needs, it's not speculated. It's not, with all due respect to my friends across the aisle, it's not a witness recantation. I can't imagine coming here... Well, it kind of is, because he's completely trying to change the entirety of the case, which was that there was these two people inside and one person out, and he was one of the two and all of that. Well, I mean, maybe all three were in there. Maybe this, maybe that. I mean, sort of totally changing the case as opposed to... And that seems to me to go more to his innocence than it does to this notion of, well, I can be found guilty of capital murder, but just not the death penalty. Your Honour, I would argue it's quite the opposite. He's trying to take the case that the state presented and show that if the jury had heard the DNA evidence showing that what they said happened, the two people... They didn't say what Your Honour said. They argued, and they have argued from day one till today, that he was a principal in that case. I don't mean literally here today up at the podium, but in their briefing, that he was a principal in this case. And our position is simply that the jury should hear the DNA evidence that was collected, that is not speculative, that is scientific, that would show that he was not in that house, and that we would ask this court to affirm the lower court's ruling to find these statutes are irreconcilable and that they do not provide the procedures needed to vindicate the right Texas has given, and we'd ask you to affirm the lower court. I'm not urging you to do this. This is our only case of the morning. You were asked quite a few questions. Is there something you didn't cover that you want to? I'll give you a couple of minutes. Oh, that's very kind, Your Honour. It doesn't have to be accepted. I think I covered it all, Your Honour. Thank you. I hope I missed all of your concerns. Thank you very much. I'll try to be brief myself. Well, how do you respond to her last point, which is, you know, if they're going to give you some rights, they've got to give you fulsome rights. And given all that she's saying, you know, if he won in the House and blah, blah, blah, maybe the jury would have found him guilty but not of the death penalty, how do you respond to that? My front-line answer is that would have been the basis of an as-applied challenge to bring to the United States Supreme Court following the CCA's decision. That would have been the way to change... Following the CCA's decision when? In the DNA, of the denial of DNA testing. In what year? 2011. I mean, that would have been... Or, I mean, he probably could have gone in 2022. But the point is, at that point, he could have said, as applied to me, this would have been... This is a violation of my procedural due process rights. But we're in a different world because of the Rooker-Felton doctrine, which generally bars collateral attacks on state court judgments. So I think a lot of the language that my friend on the other side was talking about was in that nature of, look, in my particular case, this would have really helped me. And he had the opportunity and did advance those arguments to the Court of Criminal Appeals, and the Court of Criminal Appeals rejected this. The counterargument, or at least one, is a lot had changed. And so the second request is made. At that point, the CCA simplifies its denial. So doesn't it present starkly not intending to embrace the district court? The question of whether or not the state can come in and argue a trial, horrendous individual, he was there, he was there, and there may be lurking biological material that would contradict that, and yet 64 doesn't allow it by virtue of the law of pardons. And you're talking about the merits and not statute of limitations? Well, I see the two as similar because I agree with you, unless there's a changed circumstance, but the argument really is the hair in particular, plus removing no fault, really crystallizes everything into the second CCA ruling. Totally depend on the law of the parties. And therefore, they seem similar. So we're back to, is Texas's law of parties denying him the opportunity to rebut what may have been the most powerful evidence against him? So the law of the parties, I think it's an important issue in this case, and it actually was the argument that Gutierrez seemed to advance in the district court, but it's not the argument that he's advanced in his briefing in this court. Not in the briefing, but then at the podium, it was more central. Right, and it's not what the district court embraced either, and there's not a categorical rule from the CCA that there's no way to obtain testing of DNA if someone was tried under the law of the parties. I mean, I think the CCA is going to look at the particular facts. But it is saying, oh, identity doesn't matter. And I guess the simple question to you is, what if the government makes identity its most powerful argument to execute? And we have biological material that might show that the presence and the stabbing, the viciousness wasn't misdefendants. Well, I think here the evidence was, I mean, there were multiple bases for the CCA to deny testing. And so identity was one, but it was based on, I think, I don't want to get too into the weeds of the facts, but there are a lot of opinions from this court and the federal district court on habeas review and the CCA going into those facts. And the jury had all of that before them, and it wasn't just the confession. It was the identity of the lay witnesses who saw them. It's hard to recuse the confession, right? Well, there was not the- The presence aspect of the confession. Mr. Gutierrez? Yes. Well, so he has claimed, as my friend says, that his confession was coerced. But every court to have looked at that, including this court, in denying a certificate of appealability has rejected that argument. A decade ago, this court looked at that exact claim and said on habeas review- I've asked you a question. Go on. Oh, no, no, no. I think I've covered most of the point. But are you saying that, again, what you were just discussing with Judge Higginson would be something that would have needed to be- go from CCA to Supreme Court as opposed to 1983 to district court? Yes. I mean, in terms of- if he's challenging how the CCA looked at the particular facts of his case, then yes, that's something that would need to go to the Supreme Court. And I think Reed and Skinner both used the language authoritatively construed, and they also say this is a permissible claim because it's not an as-applied challenge. And so that is why we're allowed to look at this in federal court at all. And that's why it doesn't- it isn't barred by the Rooker-Feldman Doctrine. All right. Thank you. Thanks to both of you for your helping us with these issues. This is the only case for this particular panel. Today we are adjourned. Thank you. Thank you.